UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 2:16-cv-14156-MIDDLEBROOKS/LYNCH

JAVIER NEGRON,

    Plaintiff,
v.

AUTO CLUB GROUP, INC.
d/b/a AAA AUTO CLUB GROUP,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, The Auto Club Group, Inc. d/b/a AAA Club Group ("ACG"), hereby moves for summary judgment on all counts of the Complaint filed by Plaintiff, Javier Negron ("Plaintiff"), and in support thereof states as follows:

**I.    INTRODUCTION**

    Plaintiff, a current ACG employee, filed the instant action against ACG alleging that ACG misclassified him as exempt under the Fair Labor Standards Act ("FLSA") and failed to pay him overtime. Plaintiff also alleges that ACG discriminated against him on the basis of his race (Hispanic) and retaliated against him for his complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA").

    As more particularly set forth below, Plaintiff has fallen woefully short of demonstrating a genuine issue of fact for trial. With respect to his FLSA claim, Plaintiff falls squarely within the administrative exemption from overtime. Specifically, Plaintiff, among other things, works autonomously, develops and delivers training to technicians, evaluates trainees' competencies and knowledge to determine if additional training is necessary, assesses training needs, and creates tools and programs for internal and external use. As such, the record evidence amply demonstrates that Plaintiff exercised the necessary discretion and independent judgment on matters of significance to be classified as exempt under the administrative exemption.

Likewise, Plaintiff's discrimination and retaliation claims are completely unfounded. The evidence shows that Plaintiff, who was used to working largely without direct oversight, resisted his new manager, Scott Miller, who simply made inquiries about Plaintiff's and others' tasks to learn more about their day-to-day functions. In response to inquiries about his activities, Plaintiff provided misleading information. As a result, Plaintiff was placed on formal discipline, an Employee Improvement Plan ("EIP"). Plaintiff appealed the EIP, which was independently reviewed and upheld. There is no evidence that Miller or anyone at ACG harbors racial or retaliatory animus. In fact, Miller is married to a Mexican woman, with whom he has children. The ultimate burden remains at all times with Plaintiff to prove that ACG intentionally discriminated and retaliated against him. He simply cannot do that.

Finally, Plaintiff's failure to promote claims are barred because he failed to exhaust his administrative remedies. Plaintiff never filed an amended or new charge despite the fact that the administrative proceeding was pending at the time of the promotion decisions. As a result, summary judgment must be granted for ACG.

## II.     CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

## III.    MEMORANDUM OF LAW

### A.     Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must make an affirmative presentation of specific facts showing a genuine issue, and may not simply rely on the general allegations of the pleadings. Id. A mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 251 (citations omitted). Further, a plaintiff must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322-23. The failure of proof

---

[1] ACG is filing its Concise Statement of Undisputed Material Facts ("SOF") with appropriate record citations concurrently with this Motion as required by S.D. Fla. L.R. 56.1.

concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. Id. The same standard applies to employment discrimination cases. Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) ("The long and the short of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale.").

### B. ACG Is Entitled To Summary Judgment On Plaintiff's Race Discrimination Claim

#### 1. Plaintiff Cannot Establish a *Prima Facie* Case

To establish a *prima facie* case of race discrimination, Plaintiff must establish by a preponderance of the evidence that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. See Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997); Sumerlin v. Amsouth Bank, 2007 U.S. App. LEXIS 18586 *5 (11th Cir. 2007). Plaintiff cannot satisfy the fourth prong of his *prima facie* case.

Plaintiff cannot identify a similarly situated employee outside his protected class who was treated more favorably. [SOF, ¶ 36]. In order to make a valid comparison, Plaintiff must show that he and the comparator are similarly situated in all relevant respects. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). "In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998). Courts have found that to be "similarly situated," the individuals with whom a plaintiff seeks to compare himself must have: (1) dealt with the same supervisor, (2) been subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Patterson v. Wal–Mart Stores, Inc., 1999 WL 1427751, *8 (M.D. Fla.).

Here, Plaintiff expressly testified that he cannot identify a single non-Hispanic employee who engaged in the same data-entry conduct (addressed below), and was not placed on an EIP. [SOF, ¶ 36]. See Austin v. City of Montgomery, 196 Fed. Appx. 747, 750 (11th Cir. 2006) (affirming summary judgment where plaintiff failed to identify a similarly-situated employee

3

who was treated more favorably); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (The comparator must be nearly identical to the plaintiff in order to prevent courts from second-guessing an employer's reasonable decisions); Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (affirming summary judgment where plaintiff failed to satisfy similarly situated prong of *prima facie* case); LeBlanc v. TJX Co., Inc., 214 F. Supp. 2d 1319, 1326 (S.D. Fla. 2002) ("Plaintiff . . . failed to indicate specific instances or individuals to support [the existence of a similarly situated employee], relying solely on his conclusory allegations").[2]

### 2.     ACG Has Legitimate Reasons for All Actions Taken

Even assuming that Plaintiff has presented enough evidence to support a *prima facie* case of disparate treatment (which he has not), ACG has articulated legitimate, non-discriminatory reasons for its actions. Specifically, Miller reviewed Plaintiff's January and February reports, questioned him at length regarding same, and came to an honestly held good-faith belief that Plaintiff submitted misleading and inflated data regarding his work activity. [SOF, ¶¶ 24-29, 32]. For example, Plaintiff documented that he registered 28 technicians for training when none had actually signed up for training. [SOF, 25]. Plaintiff also documented that he conducted five STU's when only one could genuinely be classified as such. [SOF, 26]. Furthermore, Plaintiff reported that he trained 61 technicians during safety meetings when Miller had previously instructed the Learning Specialists not to reflect safety meetings as "trainings" in their 2015 reports. [SOF, 28]. See Castillo v. Roche Laboratories, Inc., 467 Fed.Appx. 859 (11th Cir. 2006) (falsification of expense report was legitimate, nondiscriminatory and nonretaliatory reason for termination); Sampath v. Immucor, Inc., 271 Fed.Appx. 955 (11th Cir. 2008) (providing incomplete and misleading information to auditors constitutes legitimate, non-discriminatory reason for termination).

---

[2] To the extent that Plaintiff argues that Miller's criticism and/or scrutiny of his work constitutes an adverse action, such argument necessarily fails. See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1241 (11th Cir. 2001) (agreeing with other courts that "criticisms of an employee's job performance- written or oral- that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit").

### 3. Plaintiff Cannot Establish That ACG's Legitimate Non-Discriminatory Reasons For Its Actions Were Pretextual

A proffered legitimate, non-discriminatory reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 525 (1993). In attacking the proffered explanation, Plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in ACG's rationale. Holland v. Gee, 677 F.3d 1047, 1055-56 (11th Cir. 2012). (internal quotation marks omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Usry v. Liberty Reg'l Med. Ctr., Inc., 2014 WL 1101224, at *5 (11th Cir. 2014).

The pretext inquiry focuses on the employer's perception of the employee's conduct, not the employee's own beliefs. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332-1333 (11th Cir. 1998). Thus, while Plaintiff may dispute that he misrepresented his work activity, "an employee does not raise a triable issue as to an employer's disciplinary decision merely by denying that [he] committed the cited infraction; rather [he] must show that, at the time [his] employer levied the sanction, the employer lacked a good-faith belief that she was guilty of the offense." Hawkins v. Ceco Corp., 883 F.2d 977, 980 n.2 (11th Cir. 1989) (fact that employee did not commit disciplinary violation is "irrelevant" to question of whether employer punished her based on good faith belief that she was guilty); Smith v. City of Fort Pierce, 2014 U.S. App. LEXIS 8119, at *13 (11th Cir. 2014) ("That [the plaintiff] disputes that she bribed Perona is of no consequence. Rather, the key inquiry is whether [the defendant] took the adverse action based on a retaliatory reason."); Lowry v. Regis Salons Corp., 2006 WL 2583224, at *19 (N.D. GA. 2006) ("Indeed, even if [the employer] had been totally wrong in their conclusion as to Plaintiff's conduct . . . in the absence of evidence that they did not genuinely believe she engaged in misconduct, such an error is not sufficient by itself to establish pretext."). Plaintiff has proffered no evidence to suggest that Miller did not honestly believe that he engaged in the conduct that formed the basis for his decision to place him on an EIP. Accordingly, Plaintiff's denial that he did anything inappropriate fails to raise a genuine issue for trial that ACG's reasons were pretextual.

Further, Plaintiff's subjective conclusion that he was a victim of discrimination is legally insufficient to raise a genuine issue of fact. Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989) (plaintiff's "subjective conclusion . . . without supporting evidence, [is] insufficient to establish pretext"); Gaston v. Home Depot USA, Inc. , 129 F. Supp.2d 1355, 1368 (S.D. Fla. 2001) ("Plaintiff's mere belief, speculation, or conclusory accusation that he was subjected to discrimination will not create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment."). Similarly, Plaintiff's assertion of a conspiracy theory that he was placed on an EIP to avoid being considered for a promotion is insufficient to create an issue of fact on summary judgment. It is simply unbelievable on its face that everyone, including high level executives, management, and human resources personnel participated in a plan to keep him from getting a 5% salary increase. It is particularly ridiculous for Plaintiff to insinuate that Dan Hill, V.P. of Learning & Development, an uninterested party whose job includes review and investigation of appeals, would ignore a meritorious appeal and conspire with management to deny him a modest increase. See Gehringer v. St. Joseph's/Candler Health System, Inc., 2013 WL 1180920 (S.D. Ga. 2013) (the plaintiff failed to establish pretext where his "entire discrimination claim boils down to a conspiracy theory based on his own speculation, but not on personal knowledge.").

While Plaintiff may argue that the decisions at issue were unwarranted, it is not Plaintiff's role, or the Court's role, to act as a super-personnel department or to second-guess or quarrel with the wisdom of ACG's decisions. See Roxwell v. Bellsouth Corp., 433 F.3d 794, 798-799 (11th Cir. 2005) ("It is now axiomatic that we cannot second-guess the business decisions of an employer."); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair."). Rather, the Court's inquiry is limited to whether the employer gave an honest, non-discriminatory explanation that might motivate a reasonable employer – which ACG clearly has done. See, e.g., Chapman, 229 F.3d at 1030; see also Rojas v. State of Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (holding that where the employer has taken an employment action based on an "honest belief" of wrongdoing, even if it is mistaken in such belief, it cannot be guilty of race discrimination).

To the extent Plaintiff argues that Miller's alleged use of the word "spic" on one occasion is sufficient to establish pretext, such claim fails. The Eleventh Circuit has emphasized that

6

"'statements by decisionmakers unrelated to the decisional process' at issue will not satisfy the employee's burden" of establishing pretext. Steger v. General Elec. Co., 318 F.3d 1066, (11th Cir. 2003), quoting, Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring). See Maholanyi v. Safetouch of Tampa, Inc., 2016 WL 3595743, at *6 (M.D. Fla. July 5, 2016) (holding the following statements by plaintiff's supervisor, without more, were insufficient to establish pretext: 1) "I may just have to replace your old ass with someone younger and faster"; (2) "I remember in the old days you were a horse of a worker, now you're slow and old"; (3) "Why are you hiring a bunch of old sales people like you—they will never get the job done"; and (4) "Drew when are you going to start taking some Vitamins to speed your old ass up"). Plaintiff has no offered evidence that the alleged comment is related to the issuance of the EIP for providing misleading data.

Because Plaintiff has failed to establish that ACG took any actions against him because of his race, ACG is entitled to summary judgment on Plaintiff's race discrimination claim.

### C. Plaintiff's Failure to Promote Claim is Barred For Failure to Exhaust Administrative Remedies

Prior to filing an action in federal court for discrimination or retaliation, a plaintiff must first exhaust his administrative remedies. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (discussing the exhaustion requirement in Title VII actions). In order to exhaust one's administrative remedies under Title VII and the FCRA, a plaintiff must file an administrative charge with the EEOC and FCHR within 300/365 days of an alleged act of discrimination. See 42 U.S.C. § 2000e-5(e)(1); Fla. Stat., § 760.11(1). The purpose of the exhaustion requirement is to allow the EEOC and FCHR the first opportunity to investigate the alleged practices and to perform their role "in obtaining voluntary compliance and promoting conciliation efforts." Gregory, 355 F.3d at 1279 (11th Cir.2004) (citation and internal quotation marks omitted). The Eleventh Circuit has cautioned "that allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint. Id. at 1279-80. Consequently, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 1280 (citation and internal quotation marks omitted).

Here, Plaintiff did not amend his pending Charge or file a new charge to address his failure to promote claim concerning the Senior Learning Specialist position. [SOF, ¶ 48]. In the

absence of a timely-filed charge, this Court lacks subject matter jurisdiction over the failure to promote claim, and it must be dismissed See, e.g., Gillis v. Sports Authority, 123 F. Supp.2d 611, 615 (S.D. Fla. 2000) (dismissing discrimination complaint due to failure to allege exhaustion of administrative remedies); Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1011 (11th Cir. 1982) ("[T]he timely filing of an EEOC complaint is a condition precedent to a Title VII action"); Leblanc v. City of Tallahassee, 2003 U.S. Dist. LEXIS 16140, at *10 (N.D. Fla. 2003) ("To the extent Plaintiff failed to file a charge of discrimination within 300 days of each discrete act, his claims are time-barred.").

The Eleventh Circuit considered similar facts in Duble v. FedEx Ground Package System, Inc., 572 Fed. Appx 889 (11th Cir. 2014) (unpublished decision). In that case, the plaintiff, Michael Duble, filed a charge with the EEOC while he was still employed, alleging disability discrimination and retaliation. Duble's employment was terminated eight months later, while the EEOC charge was still pending. Like Plaintiff, Duble failed to amend his EEOC charge or file a new one to include the subsequent employment action as an alleged discriminatory and/or retaliatory act. Nonetheless, after the EEOC issued a Notice of Right to Sue two years after his termination, Duble filed a complaint which included claims for discriminatory and retaliatory termination. The district court dismissed the termination claims based on Duble's failure to exhaust his administrative remedies. The Eleventh Circuit affirmed.

In its decision, the Eleventh Circuit explained that Duble's termination claims related to a discrete act of alleged discrimination that occurred after he filed his initial charge. Duble, 572 Fed. at 893 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'")). It further explained that circuit precedent requires exhaustion of "allegations of new acts of discrimination," including retaliation. Id.

The Eleventh Circuit distinguished the facts in Duble from prior decisions in Gupta v. East Texas State University, 654 F.2d 411, 414 (5th Cir. 1981), and Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988), which held that claims that "grow [] out of a charge that is properly before the court" are excepted from the exhaustion requirement. It held that the Gupta and Baker exception did not apply to Duble's case because the alleged retaliatory termination occurred while agency proceedings were still pending. In Baker and Gupta, by

8

contrast, the court was able to exercise "ancillary jurisdiction" over the plaintiffs' retaliation claims because they accrued after the case was already in federal court. Id. The Eleventh Circuit further reasoned that the exhaustion requirement was not met because Duble "had the opportunity to amend his EEOC charge or file a new charge relating to his termination" but "chose not to" do so. Id.

Like Duble, Plaintiff's alleged retaliatory and/or discriminatory failure to promote occurred while agency proceedings were still pending, over one year before he filed suit. [SOF, ¶¶ 41, 47]. He, too, had the opportunity to amend his EEOC charge or file a new charge relating to his promotion claim and chose not to. As a result, like the plaintiff in Duble, his discriminatory and retaliatory failure to promote claims must be dismissed. See also Gadling-Cole v. Board of Trustees of the University of Alabama, 2015 WL 5579679 *fn 12 (N.D. Alabama, 2015) ("The court notes that [the plaintiff's] EEOC Charges were filed before her termination and she did not amend her charge or file a new one following her termination…Therefore, her Title VII claims based on these employment actions appear to be barred by her failure to exhaust her administrative remedies"); Terhune v. Potter, Case No. 08-cv-1218-T-23MAP (M.D. Fla. July 31, 2008) (dismissing the plaintiff's retaliation claims as untimely because the alleged retaliatory acts were discrete acts of discrimination for which no charge of discrimination was filed); Hopkins v. City of Jacksonville, 2014 WL 6610138 *6 (M.D. Fla. 2014) (limiting the plaintiff's claims to those included in the charge of discrimination filed with the EEOC); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) ("Individual acts of retaliation that form the basis of retaliation claims…must be administratively exhausted").

### D. Plaintiff's Failure to Promote Claims Also Fail On The Merits

Assuming arguendo that the Court does not dismiss Plaintiff's failure to promote claims on the grounds that Plaintiff failed to exhaust his administrative remedies, they must be dismissed on the merits.

#### 1. Plaintiff Cannot Establish a *Prima Facie* Case

To establish a *prima facie* case of discrimination in promotion, Plaintiff must show by a preponderance of the evidence: (1) that he is a member of a protected group; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other employees

with <u>equal or lesser</u> qualifications who were not members of the protected minority were promoted. <u>See</u> e.g. <u>Denney v. City of Albany</u>, 247 F.3d 1172 (11th Cir. 2001).[3]

Plaintiff has failed to adduce evidence to meet the second or fourth prongs of his *prima facie* case. Specifically, he cannot show that he was qualified for the promotion because ACG had a policy that precludes employees from applying for promotions within 90 days of issuance of an EIP. [SOF, ¶ 41]. As set forth in Section III(B)(2), Plaintiff was issued an EIP on March 30, 2015 for legitimate business reasons, and the positions at issue were posted on April 6, 2015. [SOF, ¶¶ 34 41]. Based on this ground alone, summary judgment is warranted.

Furthermore, Plaintiff cannot show that the people who were hired for the Senior Learning Specialist positions were equally or less qualified than himself. The undisputed evidence shows that they were more qualified, both objectively and subjectively, than Plaintiff. Specifically, Lowery, Tickle, and Engfer all had better annual performance evaluations than Plaintiff in 2014, just prior to the promotions. [SOF, ¶ 42]. Indeed, Plaintiff received an overall rating of "3 – Fully Met", Lowery received an overall rating of "1 – Exceeded", Tickle received an overall rating of "2 – Strongly Met", and Engfer received an overall rating of "2 – Strongly Met". [SOF, ¶ 42]. Also, Lowery received a prestigious leadership award named in honor of Senior V.P. of Automotive, Ed Schatzman. [SOF, ¶ 43]. Lowery was nominated by a number of Learning Specialists, including Plaintiff who described Lowery as someone "you go to when you were having issues and discuss different situations." [SOF, ¶ 43]. Further, Tickle and Engfer were proactive and instrumental in developing the Master Training List ("MTL") database. [SOF, ¶ 44]. <u>See</u> <u>Williams v. Central Processing Corp.</u>, 2014 WL 982764, *8 (M.D. Fla. 2014)

---

[3] There is a split of authority in the Eleventh Circuit concerning the fourth element of a failure to promote *prima facie* case. While some decisions have held that the fourth element requires that the position be filled by a person outside the protected class possessing equal or lesser qualifications, see <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004) and <u>Brown v. Alabama Dept. of Transp.</u>, 597 F.3d 1160, 1174 (11th Cir. 2010), other decisions have held that a *prima facie* case can be established merely by showing that the position remained open and that the employer either continued to attempt to fill the position or in fact filled the position with persons outside the protected class, with no mention of qualifications. <u>See</u> <u>Springer v. Convergys Customer Mgmt. Group Inc.</u>, 509 F.3d 1344, 1347 n. 2 (11th Cir. 2007). Even applying the less stringent standard, and assuming that Plaintiff had presented a *prima facie* case of failure to promote, ACG would still be entitled to summary judgment because Plaintiff has failed to submit evidence creating a genuine issue of material fact as to whether ACG's legitimate, non-discriminatory reason for not promoting Plaintiff was really pretext for discrimination.

(plaintiff failed to establish *prima facie* case of failure to promote where evidence showed that decision-maker determined other candidate had superior qualifications).

### 2. Plaintiff Cannot Create a Triable Issue on Pretext

Even if Plaintiff could establish a *prima facie* case of discrimination in promotion, he has nonetheless failed to adduce sufficient evidence to create a triable claim on the issue of pretext. In particular, "in the context of a promotion, 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Springer v. Convergys Customer, 509 F.3d 1344, 1349 (11th Cir. 2007); see also Harrington v. The Children's Psychiatric Center, 2003 WL 23356393, *10 (S.D. Fla. 2003) (a plaintiff cannot prove pretext by simply showing that she was more qualified than the person selected for the position). A "plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Springer, 509 F.3d at 1349; see also Clarke v. Winn-Dixie Stores, Inc., Case No.: 06-61886-Civ-Moreno (S.D. Fla. Oct. 12, 2007).

In this case, Plaintiff has not, and cannot, proffer sufficient evidence to show that no reasonable person would have chosen Lowery, Tickle, and Engfer for the Senior Learning Specialist positions. It is undisputed that Plaintiff was ineligible for promotion due to the fact that he was on an EIP, and that Lowery, Tickle, and Engfer each had higher performance ratings than him. [SOF, ¶¶ 41, 42]. While Plaintiff may quarrel with ACG's reasoning, there is no evidence in the record showing that its decision was racially motivated or that Lowery, Tickle, and Engfer were underqualified for the positions.

Plaintiff also cannot defeat summary judgment by arguing that the selection of the candidates was subjective. In evaluating promotion claims, the Eleventh Circuit has recognized that "[p]ersonal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions. Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position." Denney v. City of Albany, 247 F.3d 1172, 1186 (11th Cir. 2001) (quoting Chapman v. A.I. Transport, 229 F.3d 1012, 1033-34 (11th Cir. 2000) (en banc)). "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely

11

subjective criteria will rarely, if ever, prove pretext. . . ." Denney, 247 F.3d at 1185.  Rather, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Id. at 1186.  Plaintiff has provided no evidence to show that ACG's stated reasons for selecting Lowery, Tickle, and Engfer were a mask for racial discrimination.  Based on the foregoing, Plaintiff has failed to establish a claim for failure to promote and summary judgment should be entered in favor of ACG.

### E. ACG Is Entitled to Summary Judgment On Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation in the absence of direct evidence of retaliatory intent, Plaintiff must prove that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity.  Olmsted v. Taco Bell, 141 F.3d 1457, 1460 (11th Cir. 1998).  As the U.S. Supreme Court stated in UT Southwestern Medical Center v. Nassar, 133 S.Ct. 2517 (2013), a litigant alleging retaliation must prove that a retaliatory motive was the "but-for" cause of an adverse employment action, not simply that the impermissible motive was "a motivating factor." Id. at 2534.  Plaintiff cannot make this requisite showing.

#### 1. Plaintiff Has Failed To Establish A *Prima Facie* Case

Here, Plaintiff cannot establish the first or third prongs of his *prima facie* case of retaliation.  On the first prong of a retaliation claim, in order to engage in protected activity, an employee must oppose an unlawful practice.  See Snoke v. Staff Leasing, Inc., 43 F. Supp.2d 1317, 1328 (M.D. Fla. 1998).  While the plaintiff need not prove the underlying claim of discrimination, he "must have had a reasonable good faith belief that the discrimination existed." Holifield, 115 F.3d at 1566.  In this case, the conduct about which Plaintiff complained (one alleged discriminatory comment) could not objectively be thought to support a reasonable person's belief that the conduct was unlawful.  See Butler v. Alabama Dep't of Transp., 536 F.3d 1209, 1214 (11th Cir. 2008) (plaintiff's belief that a white employee's use of racial epithets on one occasion amounted to an unlawful employment practice was not objectively reasonable and thus plaintiff's retaliation claim failed as a matter of law); Wilson v. Farley, 203 F.App'x 239, 247-48 (11th Cir. 2006) (plaintiff's complaints about an employee's single derogatory remark that he was tired of plaintiff's "black ass" were not objectively reasonable and the district court did not err in finding that plaintiff failed to satisfy the first prong of a prima facie case for

12

retaliation.); Mitchell v. Barnard Construction Co., Inc., 2009 WL 3064769, at *5 (S.D. Fla. Sep. 22, 2009) ("Plaintiff, as a matter of law, could not have had an objectively reasonable belief that he was opposing an unlawful employment practice" when he complained about an employee's single derogatory comment, of being called a "black monkey," a fact that was fatal to his retaliation claim). Therefore, even if Plaintiff subjectively believed that he was discriminated against, he "has not set forth significant probative evidence that [his] belief was objectively reasonable in light of the circumstances." Snoke, 43 F. Supp.2d at 1328.

Assuming *arguendo* that Plaintiff could prove statutorily protected activity, he cannot establish the necessary causal relationship between that activity and the alleged adverse actions. In retaliation cases, the "causal link" cannot be presumed, but must be proven by a preponderance of the evidence. See Walton v. Cowin Equip. Co., 774 F. Supp. 1343, 1348 (N.D. Ala. 1991), aff'd, 974 F.2d 1348 (11th Cir. 1992). To show causation, Plaintiff must present evidence that the protected activity and the adverse action were not wholly unrelated. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999).

Generally, close temporal proximity between the employee's protected conduct and the adverse employment action will often be sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection for the purpose of establishing a *prima facie* case. Brungart v. Bell South Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000). However, there is a lack of a causal connection when an employer makes a decision before the protected activity occurs and later proceeds with that decision. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (holding that where an employer contemplated transferring an employee before the employer learned that the employee filed a Title VII suit, the employer's decision to proceed with the transfer did not establish evidence of causality).

Here, Plaintiff complained to Slupecki about the alleged racial slur on March 20, 2015. [SOF, ¶ 37]. It is undisputed that Miller sent a text message on March 18, 2015 stating that he wanted to terminate Plaintiff due to the information uncovered during their one-on-one the previous day. [SOF, ¶ 32]. It is further undisputed that Miller, Driscoll, and Slupecki had a telephone conference on March 19, 2015 to discuss the appropriate disciplinary measure to take against Plaintiff, and that a decision was made to issue him an EIP. [SOF, ¶ 34]. Therefore, there can be no question that the decision was made before Plaintiff engaged in protected activity. Because Plaintiff has failed to show that "but for" his alleged protected activity, he

13

would not have been issued an EIP or would have been promoted, he cannot present a *prima facie* case of retaliation.

### 2. Plaintiff Cannot Establish That ACG's Legitimate Non-Retaliatory Reasons Are Pretextual

Even if Plaintiff were able to establish a *prima facie* case of retaliation (which he cannot), his claim nevertheless fails because ACG has established legitimate non-retaliatory reasons for its actions and Plaintiff cannot establish pretext. See Section III(B)(2)-(3).

### F. ACG is Entitled to Summary Judgment on Plaintiff's FLSA Claim

The FLSA requires an employer to pay time-and-a-half overtime compensation to any employee who works more than 40 hours in a workweek, unless the employee is exempt from overtime compensation. One exemption is for an "employee employed in a bona fide administrative capacity," which is the administrative exemption. See 29 U.S.C. § 213(a)(1). Pursuant to the currently controlling regulations of the U.S. Department of Labor ("DOL"), the term "employee employed in a bona fide administrative capacity" is defined as any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). The U.S. Secretary of Labor has issued regulations defining and delineating the FLSA's provisions, as Congress authorized in the FLSA itself. 29 U.S.C. § 213(a)(1). Thus, the DOL's regulations have the "force and effect of law." Batterton v. Francis, 432 U.S. 416, 425, n.9 (1977).

### 1. Plaintiff Is Paid At Least $455.00 Per Week On A Salary Basis

First, it is obvious that Plaintiff's salary of $1,300 per week clearly satisfies the first prong in the administrative exemption test set forth above. His salary is well above the threshold limit of $455.00 per week. DOL regulations further provide that an employee is considered to be paid on a "salary basis" if the employee "regularly receives each pay period on a weekly, or less

14

frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a). Here, the Plaintiff was paid $1,300 per week for the entire relevant period. [SOF, ¶ 4]. No deductions were ever taken from his pay based on the quantity or quality of his work. [SOF, ¶ 4]. Thus, at all times during his employment, ACG paid Plaintiff more than the statutory minimum amount on a salary basis, as required for the administrative exemption.

### 2. Plaintiff's Duties Were Directly Related To Management Or General Business Operations

To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. 29 C.F.R. § 541.200(a). According to the DOL, the phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. 29 C.F.R. § 541.201(a). To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. Id.

In this case there is no question that the work Plaintiff performed is "directly related to assisting with the running or servicing" of ACG's business as contemplated by § 541.201. This is so because Plaintiff engaged in the precise type of activities contemplated by the regulations. Specifically, his primary activities involve servicing ACG's roadside assistance business by representing ACG and developing relationships with contractors and employees, tailoring and delivering training to technicians on safety, service, etc., assessing training needs, and creating tools and programs for internal and external use. [SOF, ¶¶ 2, 5-17]. Amendola v. Bristol-Myers Squibb Co., 558 F.Supp.2d 459 (S.D.N.Y. 2008) (holding that pharmaceutical representatives were subject to the administrative exemption from FLSA's overtime provisions because they performed non-manual work directly related to the general business operations of the company as each representative represented employer in meetings with medical providers, and tailored the content of their presentations to each medical provider based on the specific provider's needs and independently decided what promotional message would be most effective). See also Muscat v. Minacs Group USA, Inc., 2015 WL 7889932 (Court of Appeals Mich. Dec. 3, 2015) (holding

that a trainer who made decisions on how fast the training should proceed, how to answer their individual questions, how best to encourage and motivate them, how to discipline them when they made errors, and who to recommend for hiring and firing was "directly related to assisting with the running or servicing of the business.") As such, Plaintiff's employment as a Learning Specialist necessarily meets the second element of the administrative exemption.

### 3. Plaintiff's Primary Duties Include The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance

Because Plaintiff's primary duties include the exercise of discretion and independent judgment, all the elements required of an administrative exemption are met or exceeded in the present litigation. As set forth in §541.202(a), "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. §541.202(a). The regulations further provide:

> The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. § 541.202(c).

Here, Plaintiff's duties necessarily involve the exercise of discretion and independent judgment. As an initial matter, Plaintiff works autonomously and sets his own schedule. [SOF, ¶ 17]. Plaintiff, among other things, is responsible for setting up training and independently formulating creative methods to attract technicians' attendance and engage the audience, being knowledgeable to answer questions posed by the technicians, evaluating technicians' competencies, safety abilities and knowledge to determine if additional training is

necessary, assessing training needs and making recommendations, and creating tools and programs for internal and external use, including a presentation on safety. [SOF, ¶¶ 2, 5-17]. Plaintiff testified that he takes initiative to create different programs and presentations to improve ACG's business operations. [SOF, ¶ 13].

Indeed, Plaintiff testified that he regularly determines information needs, considers and evaluates alternate choices, and shows good judgment. [SOF, ¶ 8]. Plaintiff also testified that he makes logical and timely decisions within the scope of his authority, thoroughly weighing pros and cons, involving appropriate parties in the decision-making process. [SOF, ¶ 8]. Further, Plaintiff testified that he consults with management and provides recommendations or solutions for various issues that arise. [SOF, ¶ 8]. Plaintiff researches and evaluates the effectiveness of new training materials, methods, and vendors. [SOF, ¶ 9].

The case of Morales v. Compass Group, PLC, 2014 WL 5304913 (C.D. Cal. Oct. 16, 2014) is instructive. In Morales, the plaintiff was employed as a human resources consultant, and spent approximately 40% of her time performing training-related tasks. Id. at *8. During the training, "Plaintiff was expected to be knowledgeable and able to answer questions posed by participants." Id. In addition, "Plaintiff was also responsible for setting up the training and independently formulating creative methods to attract employees' attendance at her training sessions in order to meet her yearly attendance goals." Id. Accordingly, the court held that the training performed by Plaintiff required the exercise of discretion and independent judgment. Id. Here, as in Morales, Plaintiff's duties as a Learning Specialist likewise involve the exercise of discretion and independent judgment with respect to matters of significance.

Likewise, in West v. Anne Arundel County, Md., 137 F.3d 752 (4th Cir. 1998), the plaintiff was employed as a training lieutenant in the fire department. In that position, the plaintiff's primary tasks included developing, coordinating, and conducting EMS training programs, administering tests, and evaluating equipment. Id. at 764. The court determined that these duties necessarily show discretion and independent judgment on matters of significance, as contemplated by the administrative exemption. Id. It further stated that the "fact that some recommendations made by Training Lieutenants are subject to review by superior officers is no bar to application of the administrative exemption." Id.

As in Morales and West, the undisputed evidence set forth herein establishes that Plaintiff exercises discretion and independent judgment as a matter of law.

Thus, Plaintiff meets all three elements required for the administrative exemption and summary judgment must be entered in favor of ACG on Plaintiff's FLSA claim.

## IV. CONCLUSION

For the foregoing reasons, ACG respectfully requests that this Court enter summary judgment in its favor and dismiss Plaintiff's Complaint in its entirety, and for such other relief as the court deems just and proper.

Date: November 10, 2016                            Respectfully submitted,

By: */s/Candice Pinares-Baez*
**Christine Howard**
Florida Bar No.: 872229
choward@fisherphillips.com
FISHER & PHILLIPS LLP
101 E. Kennedy Blvd., Suite 2350
Tampa, FL 33602
Telephone:    (813) 769-7500
Facsimile:    (813) 769-7501
**Candice Pinares-Baez**
Florida Bar No.: 0030545
cpinares-baez@fisherphillips.com
FISHER & PHILLIPS LLP
450 East Las Olas Boulevard, Suite 800
Ft. Lauderdale, FL 33301
Telephone: (954) 525-4800
Facsimile: (954) 525-8739

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on **November 10, 2016**, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW** with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF and/or via U.S. Mail.

By:  <u>  /s/Candice Pinares-Baez  </u>
**Christine Howard**
Florida Bar No.: 872229
choward@fisherphillips.com
FISHER & PHILLIPS LLP
101 E. Kennedy Blvd., Suite 2350
Tampa, FL 33602
Telephone:     (813) 769-7500
Facsimile:     (813) 769-7501
**Candice Pinares-Baez**
Florida Bar No.: 0030545
cpinares-baez@fisherphillips.com
FISHER & PHILLIPS LLP
450 East Las Olas Boulevard, Suite 800
Ft. Lauderdale, FL 33301
Telephone: (954) 525-4800
Facsimile:  (954) 525-8739

*Attorneys for Defendant*

## SERVICE LIST

**United States District Court – Southern District of Florida**
**Javier Negron v. Auto Club Group, Inc. d/b/a AAA Auto Club Group**
**CASE NO.: 2:16-cv-14156-MIDDLEBROOKS/LYNCH**

Gina Marie Cadogan
Florida Bar No. 177350
gina@cadoganlaw.com
CADOGAN LAW
300 S Pine Island Road, Suite 107
Plantation, Florida  33324
Telephone:     (305) 503-5131
Facsimile:      (888) 270-5549

*Attorneys for Plaintiff*

Christine E. Howard
Florida Bar No. 872229
Choward@fisherphillips.com
FISHER & PHILLIPS LLP
101 E. Kennedy Blvd., Suite 2350
Tampa, Florida  33602

Candice Pinares-Baez
Florida Bar No. 0030545
Cpinares-baez@fisherphillips.com
450 East Las Olas Boulevard, Suite 800
Ft. Lauderdale, Florida 33301
Telephone: (954) 525-4800
Facsimile: (954) 525-8739

*Attorneys for Defendant*