# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-14156-MIDDLEBROOKS

JAVIER NEGRON,

      Plaintiff,

v.

AUTO CLUB GROUP, INC.
d/b/a AAA AUTO CLUB GROUP,

      Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on the Parties' cross-motions for summary judgment. Defendant Auto Club Group, Inc. d/b/a/ AAA Auto Club Group ("AAA") filed a Motion for Summary Judgment (DE 29) on November 10, 2016. Plaintiff Javier Negron ("Negron") filed a Response (DE 35) on November 28, 2016, to which AAA replied (DE 42) on December 8, 2016. Negron filed a Partial Motion for Summary Judgment (DE 27) on November 9, 2016. AAA filed its Response (DE 41) on December 5, 2016, to which Negron replied on December 14, 2016 (DE 44). For reasons stated below, AAA's Motion for Summary Judgment is granted, and Negron's Partial Motion for Summary Judgment is denied.

### I.    Background

#### a.  Negron's Duties at AAA

AAA provides towing, insurance, travel, banking, and financial services, as well as driving courses, loans, and auto buying assistance. (DE 27-1 ¶ 2; DE 40 ¶ 1). AAA currently employs Negron as a Learning Specialist on the Network Unit Learning and Development Team, which provides training and development for the automotive services unit. (DE 30 ¶ 4; DE 36 ¶

4; DE 27-1 ¶ 2; DE 40 ¶ 2).  In his capacity as a Learning Specialist, Negron earns either $1,013 or $1,300 per week on a salary basis.  (DE 30 ¶ 4; DE 36 ¶ 4).

As a Learning Specialist, Negron duties include, but are not limited to, delivering classroom and field trainings to AAA's roadside technicians and evaluating their competency.  (DE 30 ¶¶ 5, 6; DE 36 ¶¶ 5, 6).  At trainings, he answers questions posed by trainees.  (DE 30 ¶ 16; DE 36 ¶ 16).  He also conducts site visits, either in person or by phone, of contractor and AAA field stations to build relationships and encourage owners and managers to sign their technicians up for training.  (DE 30 ¶ 7; DE 36 ¶ 7).  Negron has introduced tools to improve the functioning of his department.  (DE 30 ¶¶ 10, 14; DE 42-1 at 2; DE 30-2 at 11-13).

### b.  The March 17, 2015 Meeting between Negron and Miller

On or about June 15, 2014, Scott Miller became Manager in Learning & Development of the Network Training Unit and Negron's direct supervisor.  (DE 30 ¶ 20; DE 36 ¶ 20).  Shortly after assuming his new role, Miller directed the Learning Specialists to submit their January and February data detailing how they had spent their workdays, including the number of station visits and trainings they conducted.  (DE 30 ¶¶ 21, 23; DE 36 ¶¶ 21, 23).  Miller subsequently held one-on-one meetings with all Learning Specialists to review their January and February data.  (DE 30 ¶ 24; DE 36 ¶ 24).  The Parties dispute whether Negron and Adrian Casaula submitted their data late and whether Negron misrepresented that his reporting data was up-to-date.  (DE 30 ¶ 23; DE 36 ¶ 23).  However, Negron does not dispute that on March 16, 2015, Miller expressed concern that Negron's reports were untimely to his supervisor Renda Driscoll and to Human Resources Employee Relations Specialist Brenda Slupecki.  (DE 30 ¶ 31; DE 36 ¶ 31).

On March 17, 2015, Miller met with Negron via telephone to review his January and February data.  (DE 30 ¶ 24; DE 36 ¶ 24).  Upon questioning Negron, Miller became concerned

that there were misrepresentations and other questionable entries in Negron's data, although the Parties dispute whether Negron actually misrepresented his data. (DE 30 ¶¶ 24-28; DE 36 ¶¶ 24-28). Negron claims that he heard Miller call him a "spic," as they hung up, but Miller claims that he said "what a dick." (DE 30 ¶ 37; DE 30-2 at 171). Negron has never heard Miller use any other derogatory term against Hispanics. (DE 30 ¶ 37; DE 30-2 at 45).

### c.   AAA Decides to Place Negron on an Employee Improvement Plan

On March 18, 2015, the day after Miller's meeting with Negron, Miller sent a text message to his supervisor, Driscoll, stating, "Both [Negron and Adrian Casaula] need to be terminated. I am uncovering lies and noncompliance one after another." (DE 30 ¶ 32). On March 19, 2015, Miller, Driscoll, and Slupecki held a conference call to discuss Miller's meeting with Negron. (DE 30 ¶ 34; DE 36 ¶ 34). Upon considering the facts presented by Miller, Slupecki recommended placing Negron on an Employee Improvement Plan ("EIP") rather than terminating him. (DE 30 ¶ 34; DE 36 ¶ 34).

### d.   Negron Complains to Human Resources

On March 20, 2015, Negron sent an email to Slupecki, in Human Resources ("HR"), about his March 17, 2015 meeting with Miller. (DE 30 ¶ 37; DE 30-2 at 171). In his email, Negron complained that, during the meeting, he was "reprimanded, badgered, called names and disrespected." (DE 30-2 at 171). He wrote that Miller had always micromanaged him more than anyone else on his team. (DE 30-2 at 171). He stated that he believed the reason was due to his race because he heard Miller use the word "spic" as he hung up the phone. (DE 30-2 at 171). Slupecki looked into Negron's concerns but did not substantiate them. (DE 30 ¶ 38; DE 36 ¶ 38).

3

On May 8, 2015, Negron followed up with Slupecki to advise her that Miller would not approve a phone allowance until he sent in his old company phone, and that Miller continued to "nitpick" his work.  (DE 30 ¶ 39; DE 36 ¶ 39).  Since his complaint in May 2015, Negron has not experienced any further issues with Miller, and Miller acknowledges that Negron's performance has improved.  (DE 30 ¶ 40; DE 36 ¶ 40).

### e.  Negron is Issued an EIP

On March 30, 2015, Driscoll and Miller met with Negron to deliver the EIP.  (DE 30 ¶ 34; DE 36 ¶ 34).  Negron appealed the EIP to Dan Hill, V.P. of Learning & Development, who upheld the disciplinary action.[1]  (DE 30 ¶ 35; DE 38 at 12).

### f.  Negron is not Promoted

On April 6, 2015, AAA posted three "Senior Learning Specialist" positions, for which only three employees, Otis Lowery, James Tickle, and Paul Engfer, applied.  (DE 30 ¶ 41; DE 36 ¶ 41).  Negron could not apply because AAA has a policy that an employee is not eligible for promotion for 90 days following issuance of an EIP.  (DE 30 ¶ 41; DE 36 ¶ 41).  All three employees who applied were promoted and received a 5% pay increase.  (DE 30 ¶ 41; DE 36 ¶ 41).

The three promoted employees all had better 2014 annual performance evaluations than Negron.  (DE 30 ¶ 42; DE 36 ¶ 42).  In addition, Lowery had received a prestigious leadership award.  (DE 30 ¶ 43; DE 36 ¶ 43).  However, Negron asserts that he was more qualified than the promoted employees because, unlike them, he has two college degrees, and the posting stated that college-level courses were required.  (DE 38 ¶ 13; DE 30 ¶ 45; DE 36 ¶ 45).  Nevertheless,

---

[1] Although Negron denies this assertion in Defendant's Statement of Facts, the evidence he cites does not address Dan Hill's review in any way, and his own letter to the EEOC states that the review occurred.  (DE 28 at 12).

Negron admits that Driscoll and Miller did not believe that the position required completion of college-level courses, and that Negron has no evidence that he would have been chosen for the Senior Learning Specialist position had he been allowed to apply. (DE 30 ¶¶ 45, 46; DE 36 ¶¶ 45, 46).

### g. The Equal Employment Opportunity Commission Complaint

On or about April 27, 2015, Negron filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that AAA discriminated against him by issuing him an EIP because of his race and in retaliation for his HR complaint. (DE 30 ¶ 47; DE 36 ¶ 47). On February 3, 2016, the EEOC issued a Notice and Right to Sue. (DE 30 ¶ 47; DE 36 ¶ 47). Negron never filed a charge of discriminatory or retaliatory failure to promote. (DE 30 ¶ 48). However, on June 8, 2015, Negron sent an unsworn letter to the EEOC, stating that he had been denied a promotion to Senior Learning Specialist. (DE 38).

### h. The Instant Complaint

On May 3, 2016, Negron filed the instant Complaint, alleging: (1) failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA") (Count I); (2) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II) and the Florida Civil Rights Act of 1992 ("FCRA") (Count IV); and (3) retaliatory action under Title VII (Count III) and the FCRA (Count V). (DE 1).

## II.    Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). "The non-movant's response must be tailored to the method by which the movant carried its initial burden." *Hinson v. United States*, 55 F. Supp. 2d 1376, 1380 (S.D. Ga. 1998), *aff'd,* 180 F.3d 275 (11th Cir. 1999). "If the movant presented evidence affirmatively negating a material fact, the non-movant 'must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated.'" *Id.* (citing *Fitzpatrick v. City of Altanta*, 2 F. 3d 1112, 1116 (11th Cir. 1993)). "If the movant demonstrated an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was 'overlooked or ignored' by the movant, or 'come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Id.* (citing *Fitzpatrick*, 2 F. 3d at 1116)).

When the moving party bears the burden of proof at trial, "the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (internal citation omitted). "If the moving party makes such an affirmative showing, it is entitled

to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (internal quotations and citations omitted).

## III.   Discussion

### A. Count I: Failure to Pay Overtime Wages under FLSA

Negron brings a cause of action for failure to pay overtime wages under 29 U.S.C. § 216(b) of the FLSA.   The FLSA requires an employer to pay time-and-a-half overtime compensation to any employee who works more than 40 hours per workweek, unless the employee is exempt from overtime compensation.   29 U.S.C. § 216(b).

AAA argues that Negron qualifies for the administrative exemption from overtime compensation.[2]   *See* 29 U.S.C. § 213(a)(1).   An "employee employed in a bona fide administrative capacity" is defined as an employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).   The Parties do not dispute that Negron is compensated on a salary basis at a rate of more than $455 per week.   Accordingly, only the second and third requirements of the administrative exemption are at issue.

### a.   Duties Directly Related to Management and Business Operations

---

[2] As the employer, AAA "carries the burden of proving the exemption, and the overtime exemption provisions of the FLSA are narrowly construed against the employer." *Fairris v. City of Bessemer*, 252 F. App'x 309, 310 (11th Cir. 2007) (citing *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995)).

To satisfy the second requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). "[T]he essence of the second prong's focus on 'general business operations' is to separate production from administration." *Rock v. Ray Anthony Intern., LLC*, 380 F. App'x 875, 878 (11th Cir. 2010) (citing Wage and Hour Division, U.S. Dep't of Labor, Administrator's Interpretation No. 2010-1, at 3). "Production work relates to the goods and services that the business contributes to the marketplace, whereas administration relates to running the business." *Id.* (citing Administrator's Interpretation No. 2010-1, at 3).

The undisputed facts establish that Negron performs non-manual work directly related to assisting with the servicing of AAA's roadside assistance business, rather than production work.[3] Specifically, Negron does not directly provide roadside assistance services, but rather coordinates, implements, and conducts training programs for the technicians who do in order to ensure quality control, customer satisfaction, and safety in the delivery of one of AAA's core services.

Negron directly contributes to AAA's training operations by creating internal tools to increase technician engagement and to streamline training registration. Specifically, Negron has introduced: (1) a program called Monthly Training Log and Head Count Report to track the number of technicians needed to meet training goals; (2) a number of templates, including sign-

---

[3] Negron argues that he primarily performs manual labor and asserts in his affidavit that he "provide[s] primarily hands-on demonstrative training." (DE 27-1 ¶ 14; DE 27-2 ¶ 6). However, the overwhelming evidence in the record, including his own admissions and testimony, demonstrates that his primary duties include more than scheduling and conducting manual trainings, as discussed in more detail in this section. (DE 36 ¶¶ 5, 6; DE 40-2 at 3).

in sheets and a marketing trifold; (3) an interactive training tool called Kahoot!; and (4) a safety presentation called Scene Safety. (DE 30 ¶¶ 10-14).

Although Negron minimizes the importance of these contributions, the record does not support his characterization. Negron denies that he created Scene Safety and Kahoot!, but he does not deny the role he played in introducing both programs into AAA's training operations.[4] Negron also denies Defendant's assertion that he developed the Monthly Training Log, but the portions of his affidavit to which he cites do not support his denial.[5] Indeed, in his deposition he stated, "I came up with what's now the MTL. I came up with a program called the Head Count Report, which was to keep track of all the techs."[6] (DE 30-2 at 13).

After he conducts trainings, Negron ensures quality control of AAA's roadside services by evaluating technicians' performance. Although Negron uses a point-system as part of his evaluation, he also makes independent comments and recommendations, "advis[ing] them what they did great or what they did wrong, where they can improve." (DE 30-2 at 21).

Finally, Negron builds relationships with the contractors and field managers who oversee the roadside technicians. He conducts field station visits, either in person or by phone, during which he encourages owners and managers to sign their technicians up for training and "consult[s] with the field manager and the owner [to] come up with a decision" on what training needs to prioritize. (DE 30-2 at 194).

---

[4] In an affidavit, Negron states, "I helped two other Network Trainers with consolidating the "Safety Dance and Ergonomics" into "Scene Safety and Ergonomics" materials . . . ." (DE 38 ¶ 5). At his deposition, Negron testified, "I went to a class and I brought [Kahoot!] to the team, and now the whole team is utilizing a program called Kahoot." (DE 30-2 at 11-13).

[5] Negron affidavit states, "The two Network Trainers, Tickle and Engfer did not develop the Master Training List. That was developed by my supervisor's predecessor, Matt Nasworthy." (DE 38 ¶ 12). Negron does not offer any evidence that the "Master Training List" is the same as the "Monthly Training Log."

[6] Negron explains elsewhere in his deposition that "MTL" stands for "Monthly Training Log." (DE 30-2 at 14).

Based on the undisputed evidence, the Court concludes that Negron's primary duties directly relate to the management and general business operations of AAA, rather than "working on a manufacturing production line or selling a product in a retail or service establishment." *See* 29 C.F.R. § 541.201(a).

### b. Exercise of Discretion and Independent Judgment

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The regulations provide:

> The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. . . . The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.

29 C.F.R. § 541.202(c). On the other hand, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources . . . " 29 C.F.R. § 541.202(e).

The undisputed facts show that Negron exercises discretion and independent judgment in areas of significance by implementing and coordinating training programs for the roadside technicians that service AAA's core roadside assistance business. Negron admits that he "[m]akes logical and timely decisions within the scope of authority, thoroughly weighing pros and cons, involving appropriate parties in the decision-making process." (DE 30-2 at 34-35). Although Negron denies that he "possesses the authority to make independent decisions on significant business matters without the approval or direction of management," (DE 27-2 ¶ 13), the regulations specifically provide that "employees can exercise discretion and independent

judgment even if their decisions or recommendations are reviewed at a higher level. . . ." *See* 29 C.F.R. § 541.202(c); *see also Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 664 (11th Cir. 2011) ("Though the record demonstrates that [the plaintiff] was required to submit most of her plans to management before they were finalized, review of this kind does not disqualify an employee from the administrative exemption.").

The undisputed facts show that Negron exercises discretion in coordinating field station trainings. Negron testified, and does not deny, that he consults with field representatives, owners, regional managers, and directors to determine the training needs of the field station. (DE 30-2 at 35). These consultations require him to strategically determine which trainings to provide depending on a station's "particular need [] at that very moment." (DE 30-2 at 23). In addition, as discussed above, Negron created initatives to improve training coordination through streamlined registration and tracking processes. (DE 30-2 at 11, 15).

The undisputed facts also show that Negron exercises discretion in implementing trainings. First, he tailors his trainings to optimize technician engagement and thereby improve AAA's roadside assistance services. Although Negron denies that he "exercise[s] discretion or independent judgment on the training subjects, handouts, training materials, or test forms," he testified that he exercises initiative in his delivery of training programs. For example, Negron introduced Kahoot! to make his trainings more engaging, without permission from his superiors. (DE 30-2 at 13). Second, during presentations, Negron exercises discretion and independent judgment when he answers questions from technicians as they arise.

Accordingly, the undisputed evidence shows that Negron exercises discretion and independent judgment in matters of significance, thereby satisfying all three requirements of the

administrative exemption to the FLSA's overtime requirements. [7]   AAA's Motion for Summary

Judgment on Count I is granted, and Negron's Motion is denied.

## B.  Counts II and IV: Discrimination under Title VII and FCRA

Negron alleges that AAA disciplined him and refused to promote him based on his race

in violation of Title VII, 42 U.S.C. § 2000e-2(a), and the FCRA, Fla. Stat. § 760.01, *et seq.* [8]  To

establish a *prima facie* case of discrimination, Negron may offer direct or circumstantial

evidence. [9]  *See Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

### a.  AAA's Disciplinary Action against Negron

#### i.      Direct Evidence[10]

Direct evidence of discrimination is evidence "that decisionmakers placed substantial

negative reliance on an illegitimate criterion in reaching their decision."   *Evans v. McClain of*

*Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997) (quoting *Price Waterhouse v. Hopkins*, 490

---

[7] For the first time in his Partial Motion for Summary Judgment, Negron requests payment of travel time, in addition to overtime wages, if the Court finds that he does not fall under the administrative exemption.  Because the Court finds that the administrative exemption applies to Negron, the Court need not decide whether Negron's request for travel expenses is properly before the Court for the first time on summary judgment.

[8] Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  The FCRA provides that "[i]t is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."  Fla. Stat. § 760.10.

[9] This standard applies to race discrimination claims under both Title VII and the FCRA.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.").

[10] Although Negron does not explicitly argue that he has offered direct evidence of discrimination, the Court addresses whether the use of "spic" is direct evidence of discrimination in an abundance of caution.  *See Thompkins v. Morris Brown Coll.*, 752 F.2d 558, 563-64 (11th Cir. 1985) ("When direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination.").

U.S. 228, 277 (1989) (O'Connor, J., concurring)). In contrast, "'statements by decisionmakers unrelated to the decisional process itself' are not direct evidence of improper discrimination.'" *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 808 (11th Cir. 2011) (quoting *Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring); *see also Cardelle v. Miami Beach Fraternal Order of Police*, 593 F. App'x 898, 901 (11th Cir. 2014). A "strict" standard governs whether a statement is related to the decisional process. *See Cardelle*, 593 F. App'x at 901 (statement that a new retirement program was designed "to get older people out of the department to create more promotional opportunity" was not direct evidence of discrimination because it was not made during the decisional process at issue).

Miller's use of the work "spic" at the end of their March 17, 2015 meeting is not direct evidence of discrimination. There is no evidence that Miller's comment related to the decision to discipline Negron. For example, the comment was not made during the March 19, 2015 meeting at which Miller, Driscoll, and Slupecki decided to discipline Negron. Accordingly, the comment is not direct evidence that Miller, Driscoll, and Slupecki relied on Negron's race as a factor in their decision to discipline him.[11]

### ii.    Circumstantial Evidence

Using circumstantial evidence, "a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *See Holifield*, 115 F.3d at

---

[11] Because there is no direct evidence that AAA acted with a discriminatory motive, the Court need not reach the second part of the analysis, in which the burden shifts to AAA to prove "by a preponderance of the evidence that the same decision would have been reached even absent the presence of that [discriminatory] factor." *See Thompkins v. Morris Brown Coll.*, 752 F.2d 558, 563 (11th Cir. 1985) (internal quotations and citations omitted).

1562 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). "Once the plaintiff has established a prima facie case, thereby raising an inference that he was the subject of intentional race discrimination, the burden shifts to the defendant to rebut this inference by presenting legitimate, non-discriminatory reasons for its employment action." *See id.* at 1564 (internal citation omitted). "Where the defendant meets this burden, the plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *See id.* at 1565 (citing *McDonnell Douglas,* 411 U.S. at 804).

AAA argues that there is no evidence that it treated similarly situated, non-minority employees more favorably than Negron. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield*, 115 F.3d at 1562 (internal citation omitted).

Negron admits that he cannot identify a non-Hispanic Learning Specialist who took the same actions as he did, yet was not placed on an EIP. (DE 36 ¶ 36). However, Negron also asserts that all Learning Specialists reported safety meetings as "trainings," but that only Negron and Adrian Casaula, the only other Hispanic Learning Specialist, received disciplinary action for this practice. (DE 35 at 8). While the Court could find that AAA is entitled to summary judgment on the basis of Negron's admission alone, it will address Negron's argument because, regardless, the record evidence that Negron cites does not establish a genuine issue of material fact. *See Denney v. Albany*, 247 F.3d 1172, 1184 (11th Cir. 2001) (declining to decide claim solely on basis of admitted facts, even though it could, because "[p]laintiffs' claims fail regardless of the effect of their admissions.").

As evidence that only Hispanic Learning Specialists received disciplinary action for reporting safety meetings as "trainings," Negron cites his affidavit and his EEOC complaint. First, there is no evidence in Negron's affidavit or in his EEOC complaint indicating, either way, whether AAA disciplined non-minority Learning Specialists for reporting safety meetings as "trainings." Second, Negron does not offer any evidence as to whether non-minority Learning Specialists were accused of the other reporting violations for which he was disciplined, including not updating data and misreporting the number of technicians trained and field stations visited. Third, Negron's statement in his EEOC Complaint that he had "the same production as [his] American co-workers and they were not disciplined" does not show that his non-minority colleagues were similarly-situated with regard to the misreporting of data for which he was disciplined. (DE 38 at 7).

Accordingly, there is insufficient evidence of similarly-situated employees, treated more favorably, to establish a *prima facie* case of discriminatory discipline under Title VII and the FCRA.[12]

### b. AAA's Failure to Promote Negron

AAA argues that Negron's failure to exhaust his administrative remedies, by not including his failure to promote claim in his EEOC charge, bars his failure to promote claim. "Prior to filing a Title VII action, [] a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Likewise, to file a FCRA action, a plaintiff first must file a charge of discrimination with the Florida Commission on Human Rights or the EEOC. Fla. Stat. § 760.11(1).

---

[12] Because Negron cannot establish a *prima facie* case, the Court need not address the next step in the *McDonnell Douglas* framework of whether AAA can articulate a legitimate, nondiscriminatory reason for its action that is not pretextual. *Thompkins v. Morris Brown Coll.*, 752 F.2d 558, 562 (11th Cir. 1985) (internal citation omitted).

"In light of the purpose of the EEOC exhaustion requirement, [the Eleventh Circuit has] held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d. at 1280 (internal quotations and citations omitted). Accordingly, "judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (internal quotations and citation omitted). In *Gregory*, the plaintiff filed an EEOC complaint for discriminatory termination, but did not include allegations that she was also terminated in retaliation for filing complaints of discrimination. *Gregory*, 355 F.3d at 1280. The Eleventh Circuit held that plaintiff's retaliation claim was not administratively barred because plaintiff had filed the discrimination complaints before her termination, such that a reasonable EEOC investigation would likely uncover plaintiff's previous complaints, thereby putting the EEOC on notice of retaliation as a possible reason for plaintiff's termination. *Id.*

In his EEOC charge, Negron alleges that AAA discriminated against him from March 17, 2015 through March 30, 2015, when Miller harassed him at their March 17, 2015 meeting, and when AAA disciplined him on March 30, 2015 in retaliation for complaining to HR about Miller's conduct at their meeting. Negron admits that he did not include a charge of discriminatory or retaliatory failure to promote in his initial EEOC complaint, and that he never amended his complaint to include such a charge, even though his EEOC charge was pending when his failure to promote claim arose. *See Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 893 (11th Cir. 2014), *cert. denied,* 135 S. Ct. 2379 (2015) (relying on plaintiff's opportunity to amend his pending charge as a factor in finding plaintiff did not exhaust his administrative remedies). In addition, none of the factual allegations in Negron's EEOC charge

16

encompass his failure to promote claim, which is a "discrete act" of discrimination that must be separately charged. *See Duble*, 572 F. App'x at 893 (finding EEOC charge did not embrace termination claim because termination is a discrete act of discrimination and it occurred after plaintiff filed his EEOC charge) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Nor would a reasonable EEOC investigation have uncovered AAA's failure to promote Negron because, unlike in *Gregory*, the alleged discriminatory act did not occur within the time period that Negron indicated the discrimination took place. *See Gregory*, 355 F.3d at 1280; *see also Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 841 (11th Cir. 2005) (holding that EEOC charge for discriminatory termination did not embrace hostile environment claim where nothing in charge "related to incidents of harassment, nor did anything mention the dates on which [the alleged harassment] occurred."). Accordingly, Negron's failure to promote claim falls outside the conduct charged in his EEOC complaint.

Negron argues that this June 8, 2015 letter to the EEOC gave the EEOC notice of his failure to promote claim. However, other circuits have refused to consider the content of an unsworn private letter in determining the scope of a plaintiff's EEOC charge, reasoning that "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (holding unsworn letter mailed to EEOC could not "enlarge [the] scope [of the EEOC charge] to include new claims," although it would be sufficient to amend a charge to clarify and amplify the allegations made or to allege additional acts growing out of the original charge). Because failure to promote is a "discrete act" of

17

discrimination, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114, Negron's unsworn letter cannot enlarge the scope of his EEOC charge to include this new claim. Thus, Negron's failure to promote claim is administratively barred, and the Court may not reach Negron's claim on the merits. *See Brady v. Postmaster Gen., U.S. Postal Serv.*, 521 F. App'x 914, 916 (11th Cir. 2013) (holding that exhaustion of remedies is a "jurisdictional prerequisite" to bringing a Title VII action).

In sum, AAA is entitled to summary judgment on Counts II and IV for discriminatory discipline and failure to promote.

### C. Counts III and V: Retaliation under Title VII and FCRA

Negron alleges that AAA disciplined him, failed to promote him,[13] and subjected him to a hostile work environment in retaliation for his email to Human Resources, in which he complained that Miller used the racial slur "spic" and micromanaged him. "[I]n order to prove retaliation under Title VII, a plaintiff must show that (1) [he] engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). "Because retaliation claims under the FCRA are substantively similar to Title VII retaliation claims, [the Eleventh Circuit] use[s] the same analysis for both claims." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 n.4 (11th Cir. 2010).

An employee engages in statutorily protected activity when he "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). Negron's claim falls under the first prong, known as the "opposition clause," because he

---

[13] As discussed in Section B. b. above, Negron's failure to exhaust his administrative remedies bars his failure to promote claim.

asserts that he was disciplined after he complained of racial discrimination to HR. *See Howard*, 605 F.3d at 1244.

"To establish statutorily protected conduct under Title VII's opposition clause, [plaintiff] must show that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* (internal quotations and citation omitted). "He must show both that he subjectively believed that [his employer] engaged in unlawful discrimination and that his belief was *objectively* reasonable in light of the facts and record present." *Id.* (emphasis in original) (internal quotations and citation omitted). "[Plaintiff] need not prove that the conduct he opposed was actually unlawful, but the reasonableness of his belief that [his employer] engaged in an unlawful employment practice must be measured against existing substantive law." *Id.* (internal quotations and citations omitted).

An unlawful employment practice under Title VII "requires an adverse employment action." *Id.* at 1245 (internal citation omitted). "[O]nly those employment actions that result in a *serious and material* change in the terms, conditions, or privileges of employment," when "viewed by a reasonable person in the circumstances," qualify as adverse employment actions. *Id.* (emphasis in original). Termination, failure to promote, denial of transfer, and refusal to hire are discrete acts that each constitute an unlawful employment practice. *Nat'l R.R. Passenger*, 536 U.S. 101 at 114. A hostile work environment also qualifies as an unlawful employment practice, but it is "different in kind from discrete acts." *Id.* at 115. Because its "very nature involves repeated conduct," a hostile environment claim is "based on the cumulative effect of individual acts" that "occur[] over a series of days or perhaps years . . . ." *Id.* In contrast, "a single act of harassment may not be actionable on its own," including "mere utterance of an epithet which engenders offensive feelings in an employee." *Id.* (quoting *Harris v. Forklift*

19

*Systems, Inc.,* 510 U.S. 17, 21 (1993)).  "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citing *Harris*, 510 U.S. at 23).

In *Howard*, the plaintiff brought a retaliation claim under Title VII when he was terminated after he twice complained that his supervisor was discriminating against him. *Howard*, 605 F.3d at 1242.  In his complaints, the plaintiff reported that his supervisor discriminated against him by: (1) acting less than "cordial," (2) on one occasion, speaking only to the white employees, but not to plaintiff, (3) twice directing the phrase "you people" at plaintiff, once when he wore a dirty lab coat and once when he asked for a raise, and (4) leaving a message on plaintiff's answering machine stating that his "job was in jeopardy" when plaintiff failed to inform his supervisor that he was not coming to work. *Id.* at 1241.  The court found that the supervisor's conduct alone, without "termination, demotion, or even a reprimand," did not "seriously affect[]" the plaintiff's employment. *Id.* at 1245.  Accordingly, the Eleventh Circuit found that a reasonable person in the circumstances would not believe that the complained-of conduct constituted an unlawful employment practice. *Id.*

The only alleged discrimination that Negron complained about to HR was that Miller micromanaged him and, on one occasion, called him a "spic."  Specifically, in his email to HR, Negron complained that during their March 17, 2015 meeting, Miller "forced me to open up all my emails, my sent emails, my trash to see who I had been sending emails to" and "to forward such emails to his email and he went through many of my files." (DE 30-2 at 171).  Negron wrote that "[r]ight before [Miller] hung up the phone, I am not sure if he knew that the phone had

20

an open line, I clearly heard him call me SPICK . . . ." (*Id.*). Based on hearing Miller use a derogatory term, Negron stated, "I realize[d] that the micromanaging [I had experienced since Miller started] was due to my ethnicity and not his management style." (*Id.*)

Even if Negron subjectively believes that the complained-of conduct involved an unlawful employment practice, his belief is not objectively reasonable. First, in his complaint to HR, Negron did not allege that Miller's conduct during their meeting included termination, demotion, or even a reprimand, or otherwise caused a material change in the conditions of his employment. *See Howard*, 605 F.3d at 1245. Second, the complained-of conduct falls too far short of a hostile work environment claim to support an objectively reasonable belief that Negron was reporting an unlawful employment practice. In his email to HR, Negron stated that he did not think Miller was micromanaging him because of his race until he heard Miller call him a "spic." If Negron did not think that Miller's micromanaging was racially motivated until he heard Miller use a derogatory term, Miller's conduct could not have been sufficiently frequent, severe, and abusive to constitute a racially hostile work environment. *See Nat'l R.R. Passenger*, 536 U.S. 101 at 115. Even when combined with Miller's micromanaging, Miller's derogatory comment, which may have been muttered after he thought that he had hung up the phone, and which Negron has never heard Miller use on any other occasion, is not the type of cumulative abusive behavior that gives rise to a hostile work environment. (DE 30-2 at 45). Thus, the conduct that Negron complained about to HR does not support an objectively reasonable belief that Negron was opposing an unlawful employment practice. Accordingly, Negron's retaliation claim fails for want of a statutorily protected activity, and AAA is entitled to summary judgment on Counts III and V.

**ORDERED AND ADJUDGED** that

(1) Defendant's Motion for Summary Judgment (DE 29) is **GRANTED.**

(2) Plaintiff's Partial Motion for Summary Judgment (DE 27) is **DENIED.**

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this _2l_ day of

December, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:      Counsel of Record

22